HEARING DATE: AUGUST 16, 2018
HEARING TIME: 10:00 A.M.

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Edelweiss, LLC*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Rocco A. Cavaliere, Esq.
Christopher Tumulty, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
In re:                                                      :
                                                            :  Chapter 11
BUNGALOW 3 NYC, LLC                                         :
                                                            :  Case No.: 18-11374 (SMB)
                    Debtor.                                 :
------------------------------------------------------------- x

**MOTION OF EDELWEISS, LLC FOR AN ORDER (I) PURSUANT TO
§ 365(d)(3) OF THE BANKRUPTCY CODE COMPELLING THE DEBTOR
TO PAY ALL OUTSTANDING POST-PETITION OBLIGATIONS AND (II)
GRANTING ADDITIONAL AND RELATED RELIEF**

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE

Edelweiss, LLC ("Landlord"), by its undersigned counsel, submits this motion (the "Motion") for an order (i) compelling the Debtor to pay Landlord all unpaid post-petition obligations due the Landlord pursuant to section 365(d)(3) of title 11 of the United States Code (the "Bankruptcy Code") and (ii) granting such other and further relief as the Court deems appropriate. In support of the Motion, the Landlord respectfully states as follows:

**BACKGROUND**

A.   **The Parties, the Commercial Lease and the Subject Commercial Premises**

1.   On May 4, 2018 (the "Petition Date"), the Debtor, a New York limited liability company, filed a petition seeking relief under Chapter 11 of the Bankruptcy Code.

{Client/083525/1/01606535.DOC;3 }

2. Landlord owns the commercial condominium unit 1A located at 363 Greenwich Street, New York, New York ("Premises").

3. Landlord and Debtor, as tenant, entered into a written commercial lease agreement dated May 1, 2011 for Debtor's possession of the Premises (the "Lease") for use of the premises from May 1, 2011 to April 30, 2026, provided that the Debtor complied with its rent obligations under the Lease. A copy of the Lease is annexed hereto as **Exhibit "A."** The Debtor continues to operate a restaurant and tavern at the Premises.

4. The Lease requires the Debtor to currently pay Landlord $17,319 per month on the 15th day of each month, plus additional rent. See Lease, §3(B). Additional rent includes, among other things, water, real estate taxes, late fees and Landlord's attorney fees. See Lease, §§ 4(A), 11(H), 16(B), art. 7. Furthermore, under Article 10 and 11 of the Lease, as more fully set forth below, the Debtor has an obligation to remove any lien filed against the Premises arising from the Debtor's actions.

**B.    The State Court Litigations**

5. As the Court is aware, the Debtor was involved in three state court litigations prior to the filing (the "State Court Litigations").

### 1.    The Lien Foreclosure Action

6. On July 21, 2017, the Board of Managers of the Mondo Condo Condominium "Mondo Condo" or "Condominium") commenced an action in the Supreme Court for New York County entitled *The Board Of Managers Of The Mondo Condo Condominium v. Edelweiss LLC and Eastbank, N.A.* (Index No. 156576/2017), which sought to foreclose the Lien against Landlord, as owner of the Unit (the "Lien Foreclosure Action"). In response to the Lien Foreclosure Action, Landlord filed an Answer with Counterclaims and a Third Party Complaint

against the Debtor seeking, among other things, indemnification from the Debtor for the amounts included in the Lien, its own attorneys' fees pursuant to the Lease and other damages.

### 2. The Nuisance Action

7. On October 28, 2017, the Condominium commenced a separate action against both Landlord and the Debtor, as defendants, in the Supreme Court for New York County entitled *The Board Of Managers Of The Mondo Condo Condominium, Daniel Lacivita, Neal Batra, Bret Kossman, Shoshanna Sugahara v. Bungalow 3 NYC LLC D/B/A Tribeca Tap House, Edelweiss, LLC* (Index No. 159624/2017), which included claims for nuisance, trespass, negligence, and ejectment, among others, related to Debtor's use of certain HVAC and kitchen exhaust equipment in the common area alleyway behind the Condominium's building (the "Nuisance Action"). In response to the Nuisance Action, Landlord again asserted its claims against the Debtor for, among other things, indemnification from the Debtor for the amounts included in the Lien, its own attorneys' fees pursuant to the Lease and other damages.

### 3. The Yellowstone Action

8. As noted, under the Lease, the Debtor has an obligation to remove any lien filed against the Premises arising from the Debtor's actions. Specifically, Article 10 of the Lease provides, in relevant part, that:

> Tenant shall not permit to be created nor to remain undischarged any lien, encumbrance or change to be filed against the Demised premises or building as a results of any materials provided to or work performed by or on behalf of Tenant including any Alterations made to the Demised Premises. **If a lien, encumbrances or charge is filed, the Tenant shall, within sixty (60) days from the date of filing, cause the lien to be vacated by payment or by filing the requisite bond and shall hold the Landlord harmless against the lienor's claim.** The Tenant shall defend for its own account and for the account of the Landlord, at Tenant's expense, any action or proceeding brought to compel payment of the lienor's claim and, in the event of a final judgment in the lienor's favor, shall, without delay, satisfy the judgment and cause a satisfaction to be recorded and the lis pendens, if any, vacated.

See Lease, Art. 10) (emphasis added). Article 11 of the Lease also provides that:

> Tenant shall indemnify and save harmless Landlord against all loss, liability, cost, attorneys' fees, damages or interest charges as a result of any mechanic's lien or other lien filed against the Demised Premises as a result of any act or omission or as a result of any repairs, improvements, alterations or additions made by Tenant or its agents or employees. **Tenant shall within ten (10) days of the filing of any such lien and notice given to Tenant, remove, pay or cancel said lien or secure the payment of any such lien or liens by bond or other acceptable security**…

See Lease, Art. 11(H)) (emphasis added).

9. On June 14, 2017, the Condominium filed a Lien for Common Charges (the "Lien"), which arose from attorneys' fees that the Condominium incurred in its dispute with the Debtor over the location and operation of certain HVAC equipment in the Condominium's common area alleyway and a license agreement between the Debtor and the Condominium for such use.

10. On June 27, 2017, the Condominium notified the Debtor, through counsel, that the Lien had been filed. In response, no action was taken by the Debtor to clear the Lien, despite demands by Landlord, through counsel, to do so.

11. On September 21, 2017 Landlord notified Tenant in its Notice of Default that Tenant was in default of the Lease by reason of:

> [Tenant] (i) causing a Lien for Common Charges, dated June 14, 2017, to be filed by the Condominium against the Unit, purportedly arising from attorneys' fees and other expenses of the Condominium in connection with its dispute with you concerning your use of the Condominium's common areas (the "Lien"), (ii) creating conditions, including, without limitation, continued use of allegedly disruptive HVAC equipment, which caused the Condominium to declare Owner in default of the Condominium By-Laws, and (iii) failing to promptly remedy the allegedly disruptive conditions and to remove the Lien from the Unit.

The Notice of Default provided that Tenant was required to cure the default, by among other things, removing the Lien within 30 days.

12.     In response to the Notice of Default, after several extensions were given to the Debtor with no significant progress towards a cure, the Debtor filed an application for a Yellowstone injunction, commencing an action entitled *Bungalow 3 NYC, LLC D/B/A Tribeca Tap House v. Edelweiss, LLC* (Index No. 150895/2018) (the "Yellowstone Action").

13.     The hearing on the order to show cause was held on February 27, 2018 before the New York State Supreme Court Justice, Hon. Sholomo Hagler.  A copy of the transcript of the February 27th hearing is annexed hereto as **Exhibit "B"**.  At the hearing, Justice Hagler ruled from the bench that the Debtor had an obligation to remove the Lien, stating: "the lease between the parties says that any lien that is put on the property as a result of the actions of the plaintiff [Debtor, here], the plaintiff is required to obtain a bond sufficient to remove the lien." See Transcript, p. 13. Justice Hagler concluded that "This Court requires that the plaintiff as a condition of the Yellowstone Injunction obtain a bond sufficient to remove the lien within 30 days hereof." See Transcript, p. 13.  Accordingly, the injunction continued only if the Debtor posted a bond by March 31, 2018.  Although Judge Hagler directed the parties to settle an order, and did not sign the order before the Debtor's bankruptcy filing, the ruling from the bench, as memorialized in the state court transcript, is clear.  Therefore, the Landlord submits that since the Debtor has not "cured", there is a possibility, under the circumstances, that the time to cure is expired, and the Lease is subject to termination under New York State Law, thereby prohibiting the Debtor from assuming the Lease. KB Gallery, LLC v. 875 W.181 Owners Corp, 76 A.D.3d 909, 909 (1st Dept. 2010) (holding that Yellowstone relief cannot be awarded after the cure period has expired and the lease terminated); Korova Milk Bar of White Plains, Inc. v. PRE Props, LLC, 70 A.D.3d 646, 647 (2d Dept. 2010) ("courts cannot reinstate a lease after the lapse of time specified to cure a default") (internal citations omitted).

C.  **Mondo Condo's Relief From Stay Motion**

14. Mondo Condo filed a motion for relief from stay on May 29, 2018 to move forward with the Nuisance Action and Lien Foreclosure Action. On June 28, 2018, the Debtor and Mondo Condo appeared at the Court hearing and advised the Court that the parties had reached an agreement on Mondo Condo's motion for relief from stay which was described on the record. A copy of the Court's hearing transcript is annexed as **Exhibit "C"**. Among other things, the agreement kept the automatic stay in place for a short period of time, during which time the Debtor was to remove the HVAC unit[1] from the alleyway by August 28, 2018 and exhaust fan from the alleyway by September 28, 2018. Thereafter, as per the agreement reflected on the Court record at the June 28th hearing, the automatic stay in the State Court Litigations was to be lifted to allow the State Court Litigations to continue.

15. The Landlord was cautiously optimistic that the Debtor, Mondo Condo and the Landlord would utilize the additional time granted by the stay to reach a global resolution of all issues, including potential assumption of the Lease, an agreement on the cure costs to be paid by the Debtor, and a mutual release of all parties, thereby concluding the State Court Litigations. However, unfortunately, rather than pursue a compromise, the Debtor has further antagonized the Landlord by not making payment of rent on a timely basis and by failing to correct one filed monthly operating report and failing to file another one. Under the circumstances, the Debtor cannot be trusted to follow through on its commitments.

D.  **The Debtor's Post-Petition Defaults**

16. On June 15, 2018, the Debtor made a payment of $17,319 in connection with May

---

[1] Landlord notes that prior to the Petition Date, without waiving rights to claim there was no nuisance created by the HVAC in the alleyway, the Debtor delayed in filing permits with the NY Landmark Commission which may have resolved the Condominium's stated concerns regarding the HVAC unit at an earlier stage, thereby saving the parties from legal fees associated with this specific issue.

Base Rent, which was due on May 15, 2018.

17. Although June base rent was due on June 15, 2018, on June 22, 2018, the Debtor delivered a post-dated check dated June 27, 2018 to the Landlord, which was coincidentally one day prior to the June 28th hearing before the Court. On June 27, 2018, the Landlord deposited the post-dated check in its bank account. However, as the Court is likely aware, funds associated with a personal or business check are not available to the recipient immediately upon deposit into his or her bank account. On July 2, 2018, Landlord received a communication from its bank that the June check previously delivered by the Debtor bounced for insufficient funds. Landlord's counsel immediately contacted Debtor's counsel to advise of the Debtor's default. As of the filing of this Motion, in connection with June Base Rent, the Debtor made a partial payment of $5,000 on July 5, 2018 and another partial payment of $7,500 on July 23, 2018, leaving a total remaining balance of $4,819.00 for June Base rent. The Debtor has made no payment of July Base Rent ($17,319) which was due on July 15, 2018. The Landlord also has reason to believe that the Debtor will not make payment of August Base Rent ($17,319) due on August 15, 2018. Thus, as of the August 16th hearing to consider the Motion, if no further Base Rent payments are made, the Debtor will owe the Landlord the total of **$39,347.00** in base rent obligations (the "Post-Petition Base Rent"). In addition, the Landlord is owed $2,516.61 in post-petition unpaid water charges, $4,059.44 in unpaid post-petition real estate taxes, $1,020.00 in additional security deposit, as well as late fees totaling $2,597.85, which in the aggregate total **$10,193.90** (collectively, the "Post-Petition Additional Rent").[2]

---

[2] This amount is due even if the Debtor's lease terminated as the Debtor, in that instance, is a holdover tenant, and courts view the contract rate under a lease to be the appropriate form of damages to be paid to the Landlord in that instance. See In re Ames Dept. Stores, Inc., 306 B.R. 43, 82, fn. 99 (S.D.N.Y. 2004); see In re Imperial Beverage Group, LLC, 457 B.R. 490, 502 (Bank N.D. Tex. 2011); In re Sportsman Warehouse Inc., 436 B.R. 308, 315 (Bankr. D. Del. 2009).

{Client/083525/1/01606535.DOC;3 }    7

18. In addition to the foregoing, the Landlord continues to incur legal fees to protect its rights. These ongoing fees are in addition to prepetition fees incurred by Landlord in connection with the State Court Litigations. Thus, as of this juncture, in order to cure its obligations under the Lease, the Debtor is obligated to pay Landlord's attorneys' fees that it has incurred in the State Court Litigations and in this case, aggregating $111,501.83 (the "Landlord's Legal Fees"). Of this amount, $25,536.50 relates to post-petition fees incurred from the Petition Date through June 30, 2018, which the Landlord contends should be paid on a current basis under section 365(d)(3). The Landlord's Legal Fees are a form of additional rent that is also required to be paid by the Debtor under the Lease, and which must be "cured" if the Debtor is even able to assume the Lease at this juncture.

19. Finally, while the Landlord believes it has complete defenses to the Nuisance Action and Lien Foreclosure Action, to the extent that the State Court ultimately rules in favor of Mondo Condo, then it is possible that the Mondo Condo will be successful in foreclosing on its Lien on the Premises. Pursuant to the indemnification provisions and specific Lien provisions under the Lease, any damages, costs, or fees incurred in connection with the Lien, and the Condominium's lawsuits must be satisfied by the Debtor (Lease, Art. 10, §§ 11(h), 16(b)).

**RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED**

20. By this Motion, Landlord requests that the Court compel the Debtor to comply with the terms of the Lease and pay the Base Rent and Additional Rent, as defined herein, and as mandated by section 365(d)(3) of the Bankruptcy Code, no later than **August 16, 2018**. While Landlord submits that the Debtor is also required to satisfy the Landlord's post-petition legal fees under section 365(d)(3), the Landlord has voluntarily not pursued payment of those legal fees through this Motion, without prejudice to Landlord's rights to do so in the future through a

separate motion or in connection with a "cure" objection to any motion filed by the Debtor to assume the Lease.

21. To the extent that the Debtor does not pay all of the Base Rent and Additional Rent, as defined herein, that is due to the Landlord as of August 15, 2018, the Landlord will request at the August 16th hearing that the Court consider additional relief be granted to the Landlord, as more fully set forth below.

**A.      This Court Should Compel The Debtor to Pay
         The Base Rent And Additional Rent**

22. The Debtor's failure to pay all post-petition rent and other obligations due to Landlord under the Lease violates section 365(d)(3) of the Bankruptcy Code. By this Motion, Landlord requests that the Court compel the Debtor to satisfy its outstanding post-petition obligations under section 365(d)(3) and to pay its future obligations on a timely basis under the Lease. See In re C.A.F. Bindery, Inc., 199 B.R. 828, 832 (Bankr. S.D.N.Y. 1996) ("Courts have repeatedly held that section 365(d)(3) requires the timely payment of post-petition use and occupancy as an administrative expense at the full contract rate"); see also In re Caldor, Inc.-NY, 217 B.R. 116, 120 (Bankr. S.D.N.Y. 1998) ("the statute unequivocally mandates that a debtor in possession timely perform all of the obligations of a debtor under an unexpired lease of nonresidential real property until it assumes or rejects the lease"). The Debtor's obligation to perform in a timely manner is mandatory, not permissive. See In re New Almacs, Inc., 196 B.R. 244 (Bankr. N.D.N.Y. 1996).

23. The Court should not permit the Debtor to make the Landlord an involuntary administrative creditor, but rather should direct the Debtor to timely pay the Base Rent and Additional Rent, as defined herein. A debtor in possession that wishes to enjoy the benefits of a bankruptcy process, including the automatic stay, must also be prepared to deal with the burdens

of a case, including the obligation under the Code to make timely payment of post-petition payments under their non-residential real property leases. In this case, the Debtor has made a partial payment of June Base Rent and no payment of July Base Rent. Further, the Landlord has reason to believe the Debtor will not make payment of August Base Rent by the August 15, 2018 due date. In addition, no Additional Rent has been paid. In total, exclusive of attorney fees that are also owed to the Landlord, if no payments are made from the date of this Motion through the August 16, 2018 hearing, the Debtor will owe Landlord approximately **$50,000.**

24. Aside from the current amounts owed, the Landlord is concerned about the Debtor's ability to make future rent payments. The Debtor has not been transparent about its operations to the Court. The May operating report is inaccurate as it reflects amounts of income and expenses for May 14, 2018 to May 31, 2018, as opposed to from May 4, 2018 to May 31, 2018. See Dkt Nos. 22 and 27. Furthermore, the May operating report incorrectly reflects that the Debtor is making payment of its obligations on a timely basis. Meanwhile the May rent was not paid until June 15, 2018. Landlord's counsel highlighted these discrepancies to Debtor's counsel but they have yet to be corrected. Further, the June operating report has not been filed and thus the Court and creditors alike remain "in the dark" regarding June's actual income and expenses. These circumstances give Landlord even more concern about the continued delays in payment of Base Rent and Additional Rent. The situation is untenable and cannot continue.

25. In sum, Landlord respectfully requests that the Debtor make immediate payment of Base Rent and Additional Rent that is due through August 15, 2018 no later than **August 16, 2018**, the date of the hearing.

**B. This Court Should Grant Landlord Additional Relief If The Debtor Does Not Pay the Base Rent and Additional Rent By August 16, 2018**

26.     As noted, the Debtor cannot be permitted to continue to operate at the Premises without payment of its Base Rent and Additional Rent, as defined herein. As such, if the Debtor does not make payment of the foregoing obligations by wire transfer to the Landlord or certified check[3] payable to the Landlord no later than August 16, 2018, the Landlord requests that the Court grant additional relief to the Landlord. While the Court has ample discretion to choose the most appropriate additional relief, should the Debtor not comply with payment of Base Rent and Additional Rent, as required by the statute, the Landlord has highlighted a series of options, in the order of Landlord's preference, for consideration by the Court.

    **1.    The Lease Should Be Deemed Rejected And The Debtor Should Surrender the Premises No Later than September 1, 2018**

27.     Section 365(d)(4) of the Bankruptcy Code provides a debtor a 120 day period to assume or reject a commercial non-residential lease. The 120 day period in this case ends on September 1, 2018. The Landlord is concerned that the Debtor will attempt to file a motion to extend the time to assume or reject shortly prior to September 1, 2018 and then attempt to schedule the hearing to consider a further 90 day extension <u>after</u> the September 1, 2018 deadline, as may be permitted, in some instances, under the Local Rules. Undoubtedly, such a motion would fail if the Debtor has not paid its Base Rent and Additional Rent. Thus, the Landlord respectfully requests that, under the circumstances, especially to the extent the Debtor does not pay the Base Rent and Additional Rent by August 16, 2018, and in order to avoid any potential gamesmanship, that the Court <u>require</u> any hearing on a further extension of the 120 day period take place prior to September 1, 2018. The Landlord notes that there is a status conference in the

---

[3] In light of Debtor's recent history of providing post-dated business checks that bounce, the Landlord had advised the Debtor that it requires wire payments or certified bank checks.

case scheduled for August 30, 2018 and thus, any hearing on any further extension should take place on the same day.

28. The Landlord also respectfully submits that the Court may exercise its discretion to determine that the Debtor should be compelled to reject the Lease even sooner, i.e. by August 16, 2018, under section 365(d)(2), although it is acknowledged by Landlord that this provision to compel a shortening of the time to assume or reject generally applies to residential leases and other executory contracts.

29. Although the Bankruptcy Code provides chapter 11 debtors with a "breathing space" within which to determine whether an unexpired lease or executory contract should be assumed or rejected, such "breathing space…is not without limits." In re Enron Corp., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002). The limit placed on the time for the debtor's assumption or rejection determination by case law and commentators is "reasonableness". See e.g., Dallas-Fort Worth Regional Airport Bd. v. Braniff Airways, Inc., 26 B.R. 628, 636 (N.D. Tex. 1982). The determination of what constitutes a reasonable time to assume or reject a particular executory contract is within the bankruptcy court's discretion and has to be decided in light of the particular facts of each case. See e.g. S. St. Seaport L.P. v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 760 (2d Cir. 1996); Theatre Holding Corp. v. Mauro (In re Theatre Holding Corp.), 681 F.2d 102, 105 (2d. Cir. 1982): In re Adelphia Commc'ns Corp., 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003).

30. Among the factors that the courts have used to determine what may constitute "reasonable time" for the purposes of section 365(d)(2) of the Bankruptcy Code are the following: (a) the nature of the interests at stake, (b) the balance of the harm to the parties, (c) the safeguards afforded to the parties, (d) the damage third parties may suffer beyond the

compensation available under the Bankruptcy Code, (e) the debtor's failure or ability to satisfy post-petition obligations, (f) the purposes of chapter 11, (g) the importance of the contract in question to the debtor's reorganization, and (h) whether the action to be taken is so in derogation of Congress' scheme as to be said to be arbitrary. See Adelphia, 291 B.R. at 292-94 (citing cases).

31.     As noted, the Debtor has not timely paid rent during this Chapter 11 case and as of the August 16th hearing, will owe almost $50,000 in undisputed Base Rent and Additional Rent, exclusive of attorney fees that are also owed under the Lease.  The Debtor's conduct in operating its business and not paying its obligations under section 365(d)(3) run counter to the purpose of a chapter 11 reorganization.  Further, the Debtor's failure to file correct and timely operating reports provide absolutely no transparency to the Court and creditors, a hallmark obligation of a debtor in possession in a chapter 11 case.

32.     Furthermore, the Landlord has suffered and will continue to suffer undue harm if the Debtor is permitted to continue down this path.  Not only is the Landlord not able to collect Base Rent and Additional Rent, but it is incurring legal fees to protect its rights, including the legal fees that were required to file this Motion.

33.     In some instances, a debtor may attempt to use the bankruptcy process to maximize value by selling assets or assuming and assigning below market leases.  However, the Debtor's case does not present that opportunity for value.  At minimum, the Debtor will owe Landlord all of its Base Rent, as well as Additional Rent, including all of its legal fees it has incurred in defending and protecting itself in the various State Court Litigations and in this Court.  Further, while the Landlord disputes any liability in the Nuisance Action and Lien Foreclosure Action, if Edelweiss is somehow found liable due to the Debtor's actions, then

Edelweiss would have a right to indemnity for those same damages from the Debtor. As such, in light of the significant unpaid claims, including post-petition obligations (which will continue to accrue), it is a foregone conclusion that the Debtor will not be able to cure the amounts owed under the Lease in order to assume the Lease and continue in business at the Premises.

34.    As noted, the Debtor's time to assume or reject the Lease will expire on September 1, 2018, which is 120 days after the May 4, 2018 petition date. Thus, the relief requested herein, i.e. compelling the Debtor to reject the Lease and surrender the Premises no later than September 1, 2018 (with no further extension as may otherwise be permitted under the Local Rules) is not controversial. See In re Westview 74th St., Drug Corp., 59 B.R. 747, 752 Bankr. S.D.N.Y. 1986) (§ 365(d)(4) deems a lease rejected upon failure to assume or reject it within 60 days [prior to the Amendment to 120 days] or such other extended period as the court fixes and directs the trustee to immediately surrender the leased nonresidential property to the lessor, without the necessity of any eviction proceedings under state law); see In re U.S. Fax, Inc., 114 B.R. 70, 71-73 (E.D. Pa. 1990) (requiring surrender on deemed rejection): In re Chris-Kay Foods East, Inc., 188 B.R. 70, 72 (Bankr. E.D. Mich. 1988) (same); In re O.P. Held, Inc., 77 B.R. 388, 391 (Bankr. N.D.N.Y. 1987) (same). The Debtor should not be permitted to remain in operation of its business and collect revenue, while at the same time, deny Landlord its contractual rent payments. Also, by rejecting the Lease and requiring surrender no later than September 1, 2018, the Landlord can (i) avoid the incurrence of additional legal fees in State Court proceedings, (ii) obtain a new tenant that will actually timely pay its rent, and (iii) hopefully move forward on resolving any remaining issues with Mondo Condo outside of this bankruptcy case.

35. In sum, the Landlord respectfully requests that the Court minimize the damage to the Landlord by requiring the Debtor to assume or reject the Lease and surrender possession no later than September 1, 2018 (and possibly sooner to the extent that the Court deems it appropriate to shorten the 120 day period).

**2. The Court Should Alternatively Grant Relief From The Stay To Permit the Yellowstone Action to Go Forward (Option #2)**

36. As an alternative to the relief requested above, Landlord respectfully seeks an order of the Court terminating the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to permit the Yellowstone Action to go forward. Whether "cause" exists to modify the stay must be determined on a "case by case basis, taking into consideration the interests of the debtor, the claimants, and the estate." In re MacInnis, 235 B.R. 255, 259 (S.D.N.Y. 1998) (citing In re Keene Corp., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994); see also Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990) (citing to twelve well known factors as to whether the stay should be vacated or modified to permit litigation to be continued in another forum).

37. Courts often grant relief from stay when it is necessary to permit litigation to be concluded in another forum. See e.g. Maintainco v. Mitsubishi Caterpillar Forklift America, Inc. (In re Mid-Atlantic Handling Systems, LLC), 304 B.R. 111, 130 (Bankr. D. N.J. 2003). Courts have also found that "cause" to lift the stay can exist if a debtor's actions in the case are in bad faith, utilizing the same standard of bad faith applied to determine whether a case should be dismissed under section 1112 of the Bankruptcy Code. In re 234-6 West 22nd St. Corp., 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).

38. In this case, as noted herein, the Debtor did not post a bond by March 31, 2018, as required by State Court Judge Shlomo Hagler. As such, the Debtor failed to cure the amounts

due by the deadline established by the State Court, although it is acknowledged by Landlord that the State Court Judge did not enter a formal order prior to the Petition Date. The Landlord submits that there is a strong argument that the Lease has already been terminated by virtue of the Debtor's failure to post a bond. <u>KB Gallery, LLC v. 875 W.181 Owners Corp</u>, 76 A.D.3d 909, 909 (1st Dept. 2010) (holding that <u>Yellowstone</u> relief cannot be awarded after the cure period has expired and the lease terminated); <u>Korova Milk Bar of White Plains, Inc. v. PRE Props, LLC</u>, 70 A.D.3d 646, 647 (2d Dept. 2010) ("courts cannot reinstate a lease after the lapse of time specified to cure a default") (internal citations omitted). By granting relief from stay, the Landlord can seek an order confirming the termination of the Lease and proceed with an eviction of the Debtor from the Premises.

39.     Finally, the Debtor has failed to pay any of the outstanding amounts owed under the Lease in the post-petition period. In such circumstances, several courts have held that a landlord's right to timely payment of post-petition rent is an interest in property entitled to adequate protection". See <u>In re P.J. Clarke's Restaurant Corp.</u>, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (citing cases); <u>see</u> <u>Obligo v. Louis</u> (<u>In re Obligo</u>), 328 B.R. 619, 651 (Bankr. E.D.N.Y. 2005). In light of the lack of transparency concerning the Debtor's business operations, it is difficult to assess whether the Debtor will be able to make future payments under the Lease. Therefore, since Landlord is not adequately protected under the circumstances of this case, "cause" exists to grant the relief requested herein.

### 3. In the Alternative, the Court Can Dismiss The Chapter 11 Case, Convert the Case or Appoint An Operating Trustee (Option #3)

40.     Aside from the options identified above, as the Court is aware, aside from broad inherent equitable authority, the Court has a number of other statutory tools available to it under

the Bankruptcy Code to minimize the damage to the Landlord and other creditors, including ordering dismissal of the case, conversion to Chapter 7, or the appointment of a chapter 11 trustee.

41.   Landlord submits that the Debtor filed its case in bad faith to delay entry of orders in the State Court Litigations so that the Debtor could continue operating the Premises without making payment of outstanding post-petition obligations.  Courts have held that the filing of a petition as a litigation tactic where the bankruptcy filing delayed completion of non-bankruptcy litigation in the absence of any bankruptcy purpose may constitute bad faith, justifying dismissal of a Chapter 11 case.  See e.g., In re Island Helicopters, Inc., 211 B.R. 453,461 (Bankr. E.D.N.Y. 1997) ("Although Chapter 11 does not explicitly so state, it is well established that bad faith serves as a ground for dismissal of a bankruptcy petition"); St Paul Self Storage Ltd Partnership v. Port Authority of the City of St. Paul (In re St. Paul Self Storage Ltd. Partnership), 185 B.R. 580, 584 (9th Cir. B.A.P. 1995); see also C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'Ship), 113 F.3d 1304, 1310 (2d Cir. 1997) (citing with approval holding of prior bankruptcy case wherein court dismissed chapter 11 case as a bad faith filing because "debtor filed its petition [] to avoid the consequences of adverse state court decisions" and the debtor was "unable to propose a meaningful plan of reorganization"); In re Bridge to Life, 330 B.R. 351, 356 (Bankr. E.D.N.Y. 2005) ("the proposition that a debtor's lack of good faith in filing and monitoring a chapter 11 case constitutes cause to dismiss the petition is well established"); In re Wally Findlay Galleries (New York), Inc., 36 B.R. 849, 850 (Bankr. S.D.N.Y. 1984) (dismissing a chapter 11 case as a bad faith filing after finding the "debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating" and that the

"debtor is unable to propose a meaningful plan of reorganization until its litigation…is resolved").

42.  It is well settled that, "'good faith is a requirement of every Chapter 11 case under 11 U.S.C. § 1129(a)(3) [and so the debtor] bears the burden to impress upon th[e] Court that reorganization is appropriate considering the facts and circumstances of th[e] case.'" In re Tillotson, 266 B.R. 565, 570 (Bankr. W.D.N.Y. 2001) (quoted reference omitted). Accordingly, "[t]he lack of good faith in filing and continuing a Chapter 11 constitutes 'cause' within the meaning of Code § 1112(b)." In re Copy Crafters Quickprint, Inc., 92 B.R. at 985; see also In re AdBrite Corp., 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) (additional factors on which courts have based decisions to convert or dismiss include a lack of good faith in filing for Chapter 11 or proposing a plan). However, while "the initial burden of proof for conversion or dismissal lies with the moving party," (In re Copy Crafters Quickprint, Inc., 92 B.R. at 985 (citation omitted)), "[o]nce the debtor's good faith has been put into question, the debtor bears the burden of proving good faith," (id. (citation omitted)). See also In re Setzer, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985) (holding that courts have long held that debtors bear the burden of proving filing made in good faith).

43.  "'In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions.'" In re Copy Crafters Quickprint, Inc., 92 B.R. at 985 (quoted reference omitted); see also In re Eden Assocs., 13 B.R. at 584 (stressing inquiry on intent to abuse judicial process rather than the delay to creditors). Indeed, " 'a debtor must be open, honest and straightforward in any proceedings dealing with the administration of the estate, and failure of that conduct should pique the Court's interest as to whether the bankruptcy process is being abused.' " Id. (quoted reference omitted); see also

Bridge to Life, 330 B.R. at 357 ("nor may a chapter 11 filing be employed to gain an upper hand or leverage in litigation with another party or to provide an alternate forum for such litigation").

44.   Further, aside from the Debtor's bad faith, "cause" exists to dismiss the case under § 1112(b).  Section 1112(b)(4) identifies a number of non-exclusive examples of "cause".  Several of those examples are applicable here.  As an initial matter, as indicated herein, the Debtor has filed, under penalty of perjury, an inaccurate May operating report, and has yet to file the June operating report..  See § 1112(b)(4)(F).  Also, because of the lack of information provided by the Debtor, it is unclear whether other examples of "cause" exist for dismissal such as (i) whether the Debtor is suffering a substantial or continuing loss of diminution of the estate and the absence of a reasonable likelihood of rehabilitation (see § 1112(b)(4)(A), (ii) whether the Debtor has maintained insurance (see § 1112(b)(4)(C), (iii) whether the Debtor has paid taxes or filed tax returns (see § 1112(b)(4)(I)).  Upon information and belief, it does not appear that the Debtor is taking its responsibilities and duties as a debtor in possession seriously.

45.   In this case, it is clear that the Debtor filed its petition for the sole purpose of delaying the State Court Litigations, while hoping to buy more time to allow it to operate the Premises without oversight and transparency, and apparently, without payment of its contractual obligations.[4]  As such, dismissal or conversion may be appropriate at some point in the very near future.  Further, an operating trustee may also be warranted, as transparency concerning the Debtor's operations has caused concern to the Landlord and other alleged creditors of the Debtor.

---

[4] The Debtor's bad faith is continuing in the case. The circumstances surrounding the timing of the delivery (June 22nd) of the post-dated check, the actual date of the bounced check (June 27th), the date of the June 28th hearing at which time Landlord could otherwise appear and complain about lack of payment, together with the date Landlord learned that the check bounced (July 2nd) raise obvious concerns to cynical observers.

{Client/083525/1/01606535.DOC;3 }    19

## NOTICE

46. Notice of this Motion has been served upon (i) the Debtor, (ii) the Office of the United States Trustee, and (iii) all creditors in the Debtor's case.

## RESERVATION OF RIGHTS

47. The Landlord reserves the right to supplement this Motion and make additional arguments at the hearing to consider the Motion.

**WHEREFORE**, it is respectfully requested that the Court enter an Order, substantially in the form annexed hereto as **Exhibit D"** (i) compelling payment of the Base Rent and Additional Rent, as defined in the Motion, no later than August 16, 2018 and (ii) granting such other and further relief as may be just and proper.

Dated: New York, New York
July 26, 2018

                                        **TARTER KRINSKY & DROGIN LLP**
                                        *Attorneys for Edelweiss, LLC*

                              By:   /s/Rocco A. Cavaliere
                                      Rocco A. Cavaliere
                                      Christopher Tumulty
                                      1350 Broadway, 11th Floor
                                      New York, New York 10018
                                      (212) 216-8000